March 3.
JUDGE COALTER,
This is an information filed in the Chancery Court at Richmond, by the Attorney General, against Scott and Thompson, (the one as president, and the other as treasurer, of an unchartered banking company,) under the Act of 1816, made to prevent the circulation of notes emited by unchartered banks.
The information was dismissed by the Chancellor, on a plea in bar filed by the defendants; and the Attorney General appealed from that decree to this Court.
The first question is, whether this is a criminal prosecution, and therefore not within the jurisdiction of this Court, according to the cases of Bedinger v. The Commonwealth, 3 Call, 461, and the Attorney General v. Broaddus and wife, 6 Munf. 116.
The first section of the Act above referred to, declares, “that it shall not be lawful for any association or company, not having a charter incorporating such association or company, with authority to deal or trade as a bank, now formed or in being, or which hereafter may be formed, within the limits of this Commonwealth, for the purpose of discounting notes,, bills, &c. and issuing notes, bills, &c. for the purpose of dealing, trading or carrying on business as a bank, to commence or continue the discounting of any notes or bills, &c. or the issuing of any notes, drafts or bills, &c. and every member, officer or agent, of any such company or association, that may so commence or continue such discounting or issuing, &c. shall be held and taken to be guilty of a misdemeanor, and upon conviction thereof, on in *73 dictment, information or presentment, shall be liable *to be fined at the discretion of a jury, in a sum not less than $100, nor more than $500; and if any such company or association, or any president, manager, cashier or other officer, or agent, &c. shall pay out, deliver, put in circulation, or issue, any note, draft, bill, &c. each member, officer, or agent thereof, shall be, in like manner, liable to the same penalty.”
The second section declares, ‘‘that all the capital stock of any association or company, trading or discounting paper, or issuing notes, in violation of this Act, and all the capital stock subscribed to such association or company, shall be held in trust for the benefit of the Commonwealth, and it shall be the duty of the Attorney General, whenever he shall be informed of the existence of any such company or association, to institute a suit in the Superior Court of Chancery, in the Richmond district, in behalf of the Commonwealth, for the purpose of recovering the capital stock aforesaid, In such suit, it shall be lawful to make all or any of the members of such company or association, or any officer, agent or manager thereof, parties defendant, and to call upon and compel them, or either of them, to exhibit all their books and papers, and an account of all such matters and things as may be necessary to enable the Court to make a decree, in pursuance of this Act. The members of any such association or company, made defendants in such suit, shall be held severally liable to the Commonwealth for their respective proportions of the capital stock, &c. at the institution of the suit, or at the time of the decree, &c. and the Court shall decree against the defendants, respectively and severally, the amount, &c. to be levied of the respective goods, chattels, lands and tenements of such defendants : Provided, that no disclosure, made by any party defendant to such suit, and no books or papers exhibited by him in answer to the bill, &c. shall be used as evidence against him in any motion or prosecution against any such defendant to such suit, for the recovery of any penalty or the infliction of any punishment prescribed by this Act.”
*The third section avoids all notes, &c. discounted contrary to the provisions of the Act, and provides, that any person who may pay money in virtue of such note, &c. may recover it back, &c. and executors, administrators, &c. are not to be allowed for any payment made on such illegal contract.
By the fourth section, any person who may sign, countersign, or endorse, as president, manager, or cashier, or by any other name or designation, &c. any note, &c. shall be liable, on motion, &c. before any Court of Record, &c. to a judgment in favor of the Commonwealth, for threefold the amount of any such note, &c.
The information filed in this case, sets out the first section of the Act aforesaid, and also the second section. It then goes on to charge the existence of an association, styling themselves the Culpeper Manufacturing and Agricultural Association, not having a charter, with authority to deal as a bank, and who are, and have been in the habit of discounting, &c. contrary to the said Act, &c. managed by Scott, as president, and Thompson, as-treasurer, &c. but that the attorney does not know'who the other members are. He' makes them defendants, calls on them to' answer, on oath, whether they do not act as president and treasurer of said association, and interrogates them specially as to all their actings and doings, in discounting bills, issuing notes, &c. and also, to dis-' cover who the other members are: that they exhibit the original articles of association, the journal of their proceedings, and all their books and papers, which will-give the Court full information, &c. and that they be decreed to pay the capital,stock, &c. and such other decree, &c.
The defendants plead, in substance, that-on the 7th of January, 1809, an Act of Assembly was passed, (to a copy of which-they refer, but which is not in the record,); to incorporate the Culpeper Agricultural- and Manufacturing Society, in pursuance.: of which the said company was duly constituted, and still continues, &c. : that the said corporate body is one and the same with the company and association *named in the bill, and no other; and by protestation, not confessing or admitting that they have done any act or deed, in violation of the Act of Assembly set forth in the information, say, that all their actings and doings, in relation to the issuing of notes, or any of the matters set forth in the bill, have been done and performed as officers of the said institution, duly chartered and constituted, by force of the Act of Assembly first referred to; and they plead these matters in bar of the information, &c.
This plea seems to admit the issuing of the notes, &c. as charged, but alleges that it was done by a corporate body, then in existence, under the Act referred to in the plea, and so not by an association formed for the purpose of discounting notes.
What may be the merits of this defence, it is not now proper to decide; because, if this is a criminal prosecution, of which we have no jurisdiction, then I hold we ought to give no opinion on the subject, according to the decision of this Court, in Dance’s Case, 5 Munf. 349; all such cases belonging exclusively to other tribunals.
Every section of the Act seems to me to be highly penal; and the Attorney General cannot proceed, until, either by the disclosure of the parties, or other evidence, or both combined, he convicts them of these acts, which are declared by that section to-be a misdemeanor, punishable by a heavy fine. His information would contain no> ground of claim to the capital stock of the association, nor could he get a decree therefor, except by a charge and proof of that misdemeanor; and though the disclosure made by the parties defendant, or any books or papers exhibited, are not to be used as evidence against them, in any motion or prosecution under the Act, yet a recovery in this suit is no bar to any such motion or prosecution, if it can be supported on other proofs; and such dis *74 closures, books, &c. may lead to the discovery of other evidence, which would convict them of some of the offences punishable by the Act.
But, it is not the first section only, as it appears to me, that is penal; almost every one is so. It is true, that many *of them are penalties, which, like those of- the Act to prevent usury, may be enforced incivil suits; as avoiding the notes, and the recovery back of the money, under the third section; the annulment of the contract of association itself, between the parties; the recovery of debts against them, in a summary way, though they cannot recover, and though they are incapacitated even to sue, as provided in the 5th, 6th and 7th sections.
But, the 4th section is highly penal as to the parties defendant, in this case; and their conviction under it may be produced, in consequence of a knowledge of parties, &c. obtained by the proceedings in this suit.
It is said that the second section is not penal, within the meaning of the cases, in which we have refused to take jurisdiction, because it merely creates a trust for the Commonwealth, of the capital stock, &c. But, is not this a declaration of a forfeiture of that stock to the State, for a crime against the State, and which crime must be proved, and that on the disclosure of the party defendant, and by a proceeding in Chancery? It seems to me to be a heavy penalty; and though it is not called a fine or forfeiture, it is as much so, as if it had been said, “he shall forfeit and pay to the Commonwealth, the amount of his stock.” It is as much a fine or forfeiture, as it would have been, had no other sanction or penalty been declared for the commission of this misdemeanor. Surely an accumulation of penalties, which shews rather the enormity of the offence, than that this was not intended as a punishment of it, cannot change the nature of this penalty or forfeiture.
It seems to me, therefore, to be a case clearly within the principles laid down by this Court, in the case of the Attorney General v. Broaddus and wife, above mentioned, and that the appeal must be, consequently, dismissed.
JUDGES CABEBB and GREEN concurred, and the appeal was dismissed.*